IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SARAH BRUCE**   )<br>  )<br>Plaintiff,   )<br>  )<br>v.   )<br>  )<br>**KILITCH HEALTHCARE INDIA, LTD.**,   )<br>902-B, Coliseum Co-op Premises Soc. LTD.   )<br>Godrej Coliseum, Off Eastern Express Highway   )<br>Chunabhatti, Mumbai, Mumbai City   )<br>Maharashtra, India   )<br>  )<br>**VELOCITY PHARMA, LLC**,   )<br>Serve Registered Agent:   )<br>Ankur Shah   )<br>210 Sea Lane   )<br>Farmingdale, NY 11735   )<br>  )<br>and   )<br>  )<br>**TARGET CORPORATION**   )<br>Serve Registered Agent:   )<br>C T Corporation System   )<br>112 SW 7th Street, Suite 3C   )<br>Topeka, KS 66603   )<br>  )<br>Defendants.   ) | Case Number: _____<br>Division: _____ |

**PLAINTIFF'S COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Sarah Bruce, by and through undersigned counsel of record and for her cause of action, alleges and states as follows:

**Parties, Jurisdiction, and Venue**

1. At all relevant times Plaintiff was a resident of Sedgwick County, Kansas.

2. Defendant Kilitch Healthcare India Limited ("Kilitch") is, and was at all times relevant herein, a corporation organized and existing under the laws of the country of India, with its principal place of business located at 902-B, Coliseum Co-Op Premises Soc. LTD., Gofrej

1

Coliseum, Off Eastern Express Highway, Chunabhatti, Mumbai, Mumbai City, Maharashtra, India. Kilitch designs, manufactures, markets, advertises, labels, distributes, and sells the Product at issue herein, described more fully in Paragraphs 10 through 14 below.

3. Defendant Velocity Pharma, LLC ("Velocity") is, and was at all times relevant herein, a New York limited liability company. It can be served with process via its registered agent, Ankur Shah, at 210 Sea Lane, Farmingdale, New York 11735. Velocity designs, manufactures, markets, advertises, labels, distributes, and sells the Product at issue herein, described more fully in Paragraphs 10 through 14 below.

4. Defendant Target Corporation ("Target") is, and was at all times relevant herein, a for-profit corporation with its principal office address located at 1000 Nicollet Mall TPS 3155 Minneapolis, MN 55402. Target, at all times relevant times, was (and is) authorized to and did transact business in the State of Kansas, with store locations in or about 20 cities in the State of Kansas. Target can be served with process via its registered agent, CT Corporation System, at 112 SW 7th Street Suite 3C Topeka, KS 66603. Target markets, advertises, labels, distributes, and sells the Product at issue herein, described more fully in Paragraphs 10 through 14 below, and sold said Product to Plaintiff. Further, upon information and belief, Target knew or had reason to know of and had or should have had involvement in the manufacturing, auditing, packaging, testing, labeling, shipping and safety procedures and protocols, or lack thereof, pertaining to said Product through its risk-based Audit program, described more fully in Paragraphs 26 through 30 below, or otherwise. And, upon information and belief, Target knew or should have known of the improper actions or inactions of Defendants Kilitch and Velocity with regard to said Product and should have taken steps to address the same before it reached and harmed the public, including Plaintiff.

5. Upon information and belief, Defendant Kilitch placed the Product at issue, described more fully in Paragraphs 10 through 14 below, into the stream of commerce and, by reason of contractual agreements, communication and such other ways as discovery in this case may reveal, knew and expected, or foreseeably should have known and expected, that said Product would end up in the State of Kansas and strategically targeted consumers therein.

6. Upon information and belief, Defendant Velocity placed the Product at issue, described more fully in Paragraphs 10 through 14 below, into the stream of commerce and, by reason of contractual agreements, communication and such other ways as discovery in this case may reveal, knew and expected, or foreseeably should have known and expected, that said Product would end up in the State of Kansas and strategically targeted consumers therein.

7. This Court has personal jurisdiction over all Defendants under the Kansas long-arm statute, K.S.A. § 60-308(b), and under the Due Process Clause of the U.S. Constitution because Defendants, and each of them, have conducted and do business in the State of Kansas, have induced acts in the State of Kansas, have substantial and continuing contact with the State of Kansas by marketing, promoting, distributing, and selling the Product at issue herein, described more fully in Paragraphs 10 through 14 below, to consumers in the State of Kansas on a regular and consistent basis. Further, Defendants have minimum contacts with, have purposefully directed their activities toward, and have committed a tort(s) in the State of Kansas such that taking jurisdiction over them would not offend traditional notions of fair play and substantial justice. All allegations set forth in this paragraph were true as of the time period relevant to this action.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000.00, exclusive of interests and costs, and because there is complete diversity of citizenship between the Plaintiff and Defendants.

9. This action arises out of an incident that occurred in Kansas City, Wyandotte County, Kansas. Therefore, venue is proper in this Court pursuant to 28 U.S.C. §§ 96 and 1391.

**Facts Common to All Counts**

10. On or about September 4, 2022, Plaintiff, Sarah Bruce, purchased and began using Up&Up-branded High Performance Lubricant Eye Drops (the "Product").

11. Up&Up is a Target-specific brand. Based on its own website, Up&Up is a Target-"owned brand." This Target-owned brand, according to Target's own website, is "an everyday essentials brand that offers high quality, affordable products across Target's entire assortment."

12. The Product is a twin pack of Polyethylene glycol 400 0.4%, Propylene glycol 0.3% Eye Drops and, during the relevant time period, was sold over the counter at Target retail department stores as a lubricant providing fast symptom relief for dry and irritated eyes.

13. The Product's NDC number is 11673-522-30.

14. The Product was marked with an expiration date of May 2024.

15. Plaintiff purchased the Product at the Target retail department store/KC Speedway Target, located 10900 Stadium Pkwy., Kansas City, Wyandotte County, Kansas 66111.

16. At all times hereto, Defendants were designing, manufacturing, labeling, advertising, marketing, distributing, and/or selling the Product.

17. On or about September 4, 2022, Plaintiff, suffering eye irritation, began using the Product, in a manner consistent with the Product's instructions/directions, in Wyandotte County, Kansas.

18. Shortly after using the Product, Plaintiff began experiencing, among other things, loss of vision, pain, aches and discharge in her right eye, as well as attendant headaches.

19. Plaintiff presented to Child and Family Eye Care on September 6, 2022. After several encounters and symptoms persisting, Plaintiff was referred to the Grene Vision Group for further evaluation and treatment.

20. Thereafter, it was determined that Plaintiff had developed a severe corneal ulcer infection. Cultures obtained from Plaintiff's right eye revealed Pseudomonas aeruginosa. This infection was a direct and proximate result of Plaintiff's use of the Product.

21. As a result of the infection caused by the Product, Plaintiff suffered and continues to suffer significant harm, including, but not limited to, substantial past, present, and future medical treatment and intervention with attendant medical expenses, vision loss, scarring and disfigurement of the eye, pain and suffering, loss of enjoyment of life, loss of services and an ability to provide services, and lost wages.

22. On October 27, 2023, the United States Food & Drug Administration ("FDA") issued a warning to consumers not to purchase, and to immediately stop using, 26 over-the-counter eye drop products "due to the risk of eye infections that could result in partial vision loss or blindness." The FDA further stated that it had recommended that the manufacturer of these products recall all lots on October 25, 2023, noting "agency investigators found insanitary conditions in the manufacturing facility and positive bacterial test results from environmental sampling of critical drug production areas in the facility." Among the eye drops identified in the warning was the Product.

23. On November 15, 2023, Defendant Kilitch issued a Company Announcement, stating that it was recalling various eye drop products, including the Product, with expiration dates ranging from November 2023 to September 2025. The announcement stated, in part, "[t]hese products are

being recalled due to potential safety concerns after FDA investigators found insanitary conditions."

24. On March 28, 2024, Defendant Kilitch received a Warning Letter from the FDA's Center for Drug Evaluation and Research ("CDER") identifying "significant violations of Current Good Manufacturing Practice ("CGMP") regulations for finished pharmaceuticals" and further specifying sections of the Federal Food, Drug, and Cosmetic Act ("FD&C Act") under which Defendant Kilitch's drug products, including the Product, are adulterated. The FDA cited, in particular, Title 21 Code of Federal Regulations (CFR), parts 210 and 211 and 21 U.S.C. 351(a)(2)(A)-(B).

25. On July 17, 2024, Defendant Velocity received a warning letter from the FDA's CDER, stating, in part, "[t]he inspection of your facility revealed that you operate as a distributor of certain…Up&Up…eye drop products" and that Defendant Velocity's receipt in, and introduction into, interstate commerce of adulterated drugs constituted violations of the FD&C Act. The warning went on to state, in part, "[y]ou are responsible for the quality of your drugs regardless of agreements in place with your contract facilities. You are required to ensure that drugs you deliver into interstate commerce are not adulterated." The FDA cited, in particular, 21 CFR Parts 210 and 211, 21 U.S.C. 351(a)(2)(A)-(B), and 21 U.S.C. 331.

26. Upon information and belief, Defendant Target obtained the Product through contractual agreements with Defendant Velocity and/or Defendant Kilitch, or otherwise, causing the same to be supplied, marketed, and sold at, among other places, the Target retail department store/KC Speedway Target, located 10900 Stadium Pkwy., Kansas City, Wyandotte County, Kansas 66111, where the Product was purchased by Plaintiff.

27. Defendant Target, through its own website, represents to the public: "[i]t is our mission to verify everything we source for Target is produced ethically and in accordance with all applicable laws and our policies."

28. In order to have the Product sold at its retail department stores, Defendant Target required Kilitch and/or Velocity to disclose their manufacturing locations to Target and participate in Target's Responsible Sourcing & Sustainability Audit Program.

29. Defendant Target, on its own website, makes numerous representations to the public about its audit program. Among those representations, Target states that said program "focuses on identifying health and safety violations and covers all facilities that manufacture or convert raw materials into…Target Owned Brand[s]," which did include or should have included the facility(ies) of Kilitch and Velocity at which the Product was designed, manufactured, bottled, labeled, shipped and/or sold, and which also included the Product.

30. According to Defendant Target, on its own website, its "risk-based audit program assesses manufacturing location conditions…environmental practices and compliance with applicable laws and Target's Standards of Vendor Engagement."

31. According to Defendant Target's own website, "all disclosed manufacturing locations must conduct regular audits and have them approved by [Target's] industry-aligned audit protocol."

32. As part of its audit program, Defendant Target "maintains the right to conduct unannounced audits of any disclosed location," which did include or should have included the facility(ies) of Kilitch and Velocity at which the Product was designed, manufactured, bottled, labeled, shipped and/or sold.

33. Defendant Target values "common or shared audit programs, addressing issues that are too big for any one company to tackle alone through collaboration with others."

7

34. Defendant Target knew or should have known, via its audit program or otherwise, about Defendants Kilitch and Velocity's wrongful acts, described more fully herein, as well as their inadequate, non-existent, and/or unenforced manufacturing, testing, packaging, labeling, shipping, and/or safety protocols and policies, all of which foreseeably, and in actuality, resulted in the Product being adulterated, defective and dangerous, such that reasonably foreseeable consumers, including Plaintiff, would be and were harmed by using the Product in an expected and foreseeable manner. Among its wrongful conduct, described more fully herein, Defendant Target failed in its obligations in this respect.

**COUNT I: "Product Liability Claim" – Sounding in Strict Products Liability Pursuant to the Kansas Product Liability Act, K.S.A. § 60-3301, *et seq.***
*(All Defendants)*

35. Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

36. The injuries and damages to Plaintiff Sarah Bruce, as referenced more fully herein, resulted from the defective conditions of the Product.

37. At all times relevant hereto, Defendants, each of them, were "manufacturers" or "product sellers" as those terms are defined by K.S.A. § 60-3302(a) and (b).

38. The condition(s) of the Product complained of herein existed at the time the Product left Defendants' respective control.

39. Pursuant to K.S.A. § 60-3304(b), "[w]hen the injury-causing aspect of the product was not, at the time of manufacture, in compliance with legislative regulatory standards or administrative regulatory safety standards relating to design, performance, warnings or instructions, the product shall be deemed defective unless the product seller proves by a preponderance of the evidence that its failure to comply was a reasonably prudent course of conduct under the circumstances."

8

40. At all relevant times, the Product was defective and in an unsafe and unreasonably dangerous condition by reason of its manufacture, as well as by reason of its defective design, testing and lack of warnings, thereby exposing foreseeable users, including Plaintiff, to unreasonable risk of harm.

41. Upon information and belief, the Product, including its design, manufacture, packaging, performance, labeling, distribution and sale, was defective and unreasonably dangerous in one or more of the following respects:

    a. The Product was manufactured in insanitary conditions and/or otherwise improperly manufactured;

    b. The Product was contaminated;

    c. The Product failed to conform to Defendants' own design specifications and/or performance standards

    d. The Product was defectively designed;

    e. The Product was manufactured with defective materials/components;

    f. The Product was inadequately tested, or not tested at all, for defects in its manufacture or to determine whether it was of the appropriate grade, quality or kind;

    g. The Product was inadequately sampled, or not sampled at all, for defects in its manufacture or to determine whether it was of the appropriate grade, quality or kind;

    h. Further defects and dangers which may be illuminated during discovery of the relevant and material facts.

42. The Product was further defective and unreasonably dangerous due to the inadequate warnings and instructions provided with the product at the time of sale and distribution and/or when Defendants learned, knew, or had reason to know of the defect(s) existing in the Product.

43. The Product was in an unsafe, defective and unreasonably dangerous condition at the time it left Defendants' respective control. The Product responsible for Plaintiff's injuries was in substantially the same defective condition at the time of the incidents described herein, as it was in when the Product left Defendants' respective control.

44. The Product was expected to and did reach the usual consumers and persons coming into contact with the Product, including Plaintiff, without substantial change in the condition in which it was designed, produced, manufactured, labeled, sold, distributed, and/or marketed by Defendants, respectively.

45. The Product's unsafe, defective, and dangerous condition was a direct and proximate cause of the injuries suffered by Plaintiff.

46. As designed, manufactured, labeled, warned, sold, and supplied by Defendants, the Product was defective and unreasonably dangerous and was so when it was placed into the stream of commerce by Defendants.

47. As a direct and proximate result of the defects in the Product, including its design, manufacture, labeling, packaging, lack of warnings or instructions, lack of testing, sampling or auditing, Plaintiff Sarah Bruce was seriously injured and suffered the damages, injuries and losses as pled herein, which include, but are not limited to: substantial past, present, and future medical treatment and intervention with attendant medical expenses, permanent vision problems/loss, scarring and disfigurement of the eye, pain and suffering, loss of enjoyment of life, loss of services and an ability to provide services, and lost wages.

48. As pled herein, Defendants knew or should have known about the defective and unreasonably dangerous condition of the Product well before it was purchased by Plaintiff.

49. As pled herein, Defendants acted in a willful, wanton, and reckless manner with respect to the safety of foreseeable users of the Product, including Plaintiff, so as to warrant the imposition of punitive damages to punish Defendants and deter others from similar conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count I of her Complaint, for such sums as are fair and reasonable in excess of $75,000, for punitive damages, for interest on any judgment entered, for her costs herein, and for such other relief as the Court deems just and proper.

**COUNT II: "Product Liability Claim" – Sounding in Negligence Pursuant to the Kansas Product Liability Act, K.S.A. § 60-3301, *et seq.***
*(All Defendants)*

50. Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

51. Defendants owed consumers and/or foreseeable users, including Plaintiff, the duty of reasonable care in the design, manufacture, marketing, distribution, and sale of the Product.

52. Defendants breached their duties of care by the following negligent acts and/or omissions, among others:

   a. Failing to safely and reasonably design, manufacture, package, label, distribute and sell the Product with reasonable care and, instead did so in a negligent and/or reckless manner;

   b. Failing to follow procedures designed to prevent contamination of purportedly sterile products;

c. Failing to conduct proper sampling of products to ensure the Product was safe and free of defects;

d. Failing to follow proper cleaning, disinfecting, and sterilizing procedures;

e. Failure to establish and/or follow adequate quality control procedures in manufacturing the Product so as to prevent contamination;

f. Failure to establish and/or follow adequate quality control procedures so as to ensure the Product is packaged in a sanitary environment and/or under conditions to prevent contamination;

g. Failing to abide by legislative regulatory standards and/or administrative regulatory standards for the safe manufacture, marketing, distribution, and/or sale of the Product;

h. Placing the Product into the stream of commerce despite the Product being unsafe and/or defective;

i. Placing the Product into the stream of commerce despite the Product being unfit for its foreseeable and intended uses and/or being likely to cause injury under ordinary and foreseeable use;

j. Failing to have adequate supervision and/or precautionary measures in place to avoid introducing defective products into the stream of commerce;

k. Failing to provide adequate instruction and/or warnings with the product after learning, knowing, or having reason to know, of the defects existing in the Product that rendered it unreasonably dangerous when used in a reasonably foreseeable manner and that users of the Product, including Plaintiff, would not realize the potential dangers associated with ordinary and foreseeable use;

    l. Failing to provide post-sale warnings or to recall the Product after learning, knowing, or having reason to know of the defects existing in the Product that rendered it unreasonably dangerous for its intended use;

    m. Failing to conduct, or conducting without due care, audits to ensure the responsible and safe manufacturing, testing, packaging, labeling, shipping, and/or selling procedures and practices of relevant business partners prior to introducing the Product into the stream of commerce;

    n. Failing to properly and thoroughly investigate past incidents of harm similar to those alleged herein.

53. Plaintiff further specifically pleads the doctrine of *res ipsa loquitur* in that:

    a. The damages sustained by Plaintiff would not have occurred in the absence of negligence of Defendants;

    b. The Product was under the exclusive control of Defendants at all times relevant to the claims herein and up until the point at which Plaintiff was harmed by the Product; and

    c. The harms alleged herein were not due to any contributory negligence on behalf of Plaintiff.

54. As a direct and proximate result of Defendants' negligence, the Product was designed, manufactured, packaged, marketed, distributed, and sold in a defective condition, and it was unreasonably dangerous when used as intended and when put to reasonably anticipated and/or foreseeable use by persons, including Plaintiff.

55. Plaintiff's injuries and damages and the manner in which they occurred were reasonably foreseeable to Defendants.

56. As a direct and proximate results of Defendants' negligence, Plaintiff Sarah Bruce was seriously injured and suffered the damages, injuries and losses as pled herein, which include, but are not limited to: substantial past, present, and future medical treatment and intervention with attendant medical expenses, permanent vision problems/loss, scarring and disfigurement of the eye, pain and suffering, loss of enjoyment of life, loss of services and an ability to provide services, and lost wages.

57. As pled herein, Defendants acted in a willful, wanton, and reckless manner with respect to the safety of foreseeable users of the Product, including Plaintiff, so as to warrant the imposition of punitive damages to punish Defendants and deter others from similar conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count II of her Complaint, for such sums as are fair and reasonable in excess of $75,000, for punitive damages, for interest on any judgment entered, for her costs herein, and for such other relief as the Court deems just and proper.

**COUNT III: Violation of the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.***
*(All Defendants)*

58. Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

59. Plaintiff is a "consumer" of the Product as defined in the Kansas Consumer Protection Act, K.S.A. § 50-624(b).

60. Defendants are "suppliers" of the Product as defined in the Kansas Consumer Protection Act, K.S.A. § 50-624(l).

61. The Product is "property" as defined in the Kansas Consumer Protection Act, K.S.A. § 50-624(j).

62. The sale of the Product by Defendant Target to Plaintiff is a "consumer transaction" as defined by the Kansas Consumer Protection Act, K.S.A. § 50-624(c).

63. The condition of the Product and its sale was a deceptive act under the Kansas Consumer Protection Act, K.S.A. § 50-626(b), because knowingly or with reason to know, Defendants made representations that:

   a. The Product had characteristics, uses, and benefits that it did not have;

   b. The Product was of a particular standard, quality, or grade when it was of another which differed materially from the representation.

64. In the alternative, the sale of the Product was a deceptive act under the Kansas Consumer Protection Act, K.S.A. § 50-626(b), because Defendants failed to state a material fact, or willfully concealed, suppressed, or omitted a material fact when they sold the Product, namely that:

   a. The Product was not reasonably safe for its intended and foreseeable use because the conditions of its manufacture, packaging, marketing, distribution, and/or sale departed from industry and public safety standards as pled elsewhere herein;

   b. The Product's manufacturing and supply chain had not been audited with due care consistent with purported standards;

   c. The Product had not been adequately tested or evaluated for its safety when put to foreseeable and intended use by a user or consumer, including Plaintiff.

65. As a direct and proximate result of Defendants' violations of the Kansas Consumer Protection Act, Plaintiff Sarah Bruce was seriously injured and suffered the damages, injuries and losses as pled herein, which include, but are not limited to: substantial past, present, and future medical treatment and intervention with attendant medical expenses, permanent vision

problems/loss, scarring and disfigurement of the eye, pain and suffering, loss of enjoyment of life, loss of services and an ability to provide services, and lost wages.

66. Defendants' actions and omissions in the manufacture, packaging, marketing, distribution, and/or sale of the Product, with respect to the consumer transaction pled herein constitute willful, wanton, and reckless conduct with respect to the safety of the Product's users and consumers, including Plaintiff, so as to warrant the imposition of punitive damages to punish Defendants and deter others from similar conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count III of her Complaint, for such sums as are fair and reasonable in excess of $75,000, for punitive damages, for interest on any judgment entered, for her costs herein, and for such other relief as the Court deems just and proper.

### **COUNT IV: Loss of Consortium, K.S.A. § 23-2605**
*(All Defendants)*

67. Plaintiff incorporates by reference the foregoing statements and allegations as though fully set forth herein.

68. Plaintiff is married to Franklin Terrill Bruce and was at all times relevant hereto.

69. In addition to the damages and harm alleged elsewhere herein, Plaintiff specifically states that, as a direct and proximate result of Defendants' acts and omissions regarding the manufacturing, marketing, advertising, labeling, distribution, and sale of the Product, Plaintiff's husband has suffered, and will continue to suffer, a loss of consortium pursuant to K.S.A. § 23-2605.

70. Plaintiff's husband's loss of consortium, asserted on his behalf herein, includes, but is not limited to, the loss and/or impairment of Plaintiff's ability to perform services in the household and as a wife in the discharge of her domestic duties, along with the loss and/or impairment of

Plaintiff's companionship, aid, assistance, comfort and society.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count IV of her Complaint, for such sums as are fair and reasonable in excess of $75,000, for punitive damages, for interest on any judgment entered, for her costs herein, and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Brandon Henry*
Brandon D. Henry     KS # 21258
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel. (816) 701-1100
Fax (816) 531-2372
bhenry@wcllp.com
**ATTORNEY FOR PLAINTIFF**